IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHANIE G.,

    *Plaintiff,*

vs.

SOCIAL SECURITY ADMINISTRATION,
Kilolo Kijakazi, Acting Commissioner,

    *Defendant.*

Case No. 20-2623-EFM

**MEMORANDUM AND ORDER**

Plaintiff Stephanie G. seeks review of a final decision by Defendant, Commissioner of Social Security ("Commissioner"), denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act. Plaintiff alleges that the administrative law judge ("ALJ") formulated a residual functional capacity ("RFC") unsupported by substantial evidence in that he failed to consider each of Plaintiff's impairments. Having reviewed the record, and as described below, the Court reverses the order of the Commissioner and remands this case for further proceedings consistent with this decision.

    **I.**    **Factual and Procedural Background**

Plaintiff was born on January 12, 1984. On April 24, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. On the same date,

she also protectively filed a Title XVI application for supplemental security income. In both applications, she alleged disability beginning September 28, 2017. Plaintiff alleged that she was unable to work due to several conditions including three surgeries to her lumbar spine, shooting pain in her right leg, diabetes, anxiety, bipolar disorder, manic depressive, and attention deficit hyperactivity disorder (ADHD). Plaintiff's application was denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

ALJ Michael D. Burrichter conducted an administrative hearing by video on November 19, 20198. Plaintiff was represented by counsel, and Plaintiff testified about her medical conditions. The ALJ also heard from Denise Waddell, an impartial vocational expert.

On December 24, 2019, the ALJ issued his written decision, finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with sciatica, disc protrusion and herniation status-post surgeries, post-laminectomy syndrome, diabetes mellitus, and obesity. In addition, the ALJ found that Plaintiff had medically determinable non-severe mental impairments of depression/bipolar, anxiety, and ADHD. The ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in that she can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes and scaffolds, kneel, crouch and crawl; and can occasionally climb ramps and stairs, balance, and stoop. The claimant should never work at unprotected heights, with moving mechanical parts, and in vibration.

The ALJ then determined that Plaintiff was capable of performing past relevant work as an order clerk as it is both actually and generally performed. In the alternative, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. Thus, the ALJ concluded that Plaintiff had not been under a disability from September 28, 2017, through the date of his decision.

Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Plaintiff's request on October 30, 2020. Accordingly, the ALJ's December 2019 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision. Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

mind might accept to support the conclusion."[3]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7]  The steps are designed to be followed in order.[8]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3)

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)); 20 C.F.R. § 416.920 (2005)).

[7] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Id.*

whether the severity of those impairments meets or equals a designated list of impairments.[10]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[11]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[12]  The claimant bears the burden in steps one through four to prove an impairment or combination thereof that prevents the performance of past relevant work.[13]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[14]

### III.   Analysis

Plaintiff argues that the ALJ formulated an RFC unsupported by substantial evidence.  She asserts that the ALJ failed to consider each of Plaintiff's physical impairments and failed to incorporate limitations resulting from Plaintiff's depression, bipolar disorder, anxiety, and ADHD.

---

[10] *Lax*, 489 F.3d at 1084 (citations omitted).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[12] *Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id*. (citation omitted).

**A.      Paraspinal Abscess**

Plaintiff contends that the ALJ erred by failing to consider her paraspinal abscess a medically determinable impairment that complicated her recovery from spine surgery and her prognosis.  Plaintiff recounts the evidence in the medical records showing that she experienced an abscess on her spine secondary to sepsis.  Plaintiff argues that the delay in diagnosing and treating the abscess and infection resulted in long-term problems.  Plaintiff contends the abscess and resulting complications qualify as a medically determinable impairment under 20 C.F.R. § 404.1521.

The ALJ's decision contains no mention of the abscess, sepsis, or any other complication of Plaintiff's three spinal surgeries.  Defendant argues that this is because the condition did not last for 12 months and therefore does not qualify as a medically determinable impairment.  However, the ALJ did not say this.  As Plaintiff points out, the ALJ considered other conditions Plaintiff complained of (pain in her right leg, blood clots, pneumonia, and trouble sleeping), finding that they did not qualify as medically determinable impairments, yet he did not even mention the spinal abscess, sepsis, or infection.

"[T]he first consideration at step two is what, if any, medically determinable impairments plaintiff has regardless of the credibility of her allegations of the severity of those impairments."[15]  Here, the ALJ did not discuss the paraspinal abscess or complications resulting therefrom.  He did not state that he found that the abscess was not a medically determinable impairment; he simply did not mention it.  "[B]ecause the ALJ said nothing about this evidence, it is impossible to ascertain how he treated it."[16]  Therefore, remand is necessary for the Commissioner to determine

---

[15] *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1194 (D. Kan. 2007).

[16] *Mary Lou P. v. Saul*, 2019 WL 6727101, at *4 (D. Kan. 2019).

whether the abscess, its delayed diagnosis and treatment, sepsis, and possible long-term consequences is a medically determinable impairment and, if so, to include that impairment in his consideration and analysis regarding the remaining steps in the sequential evaluation process.[17]

### B.     Cervical and Thoracic Impairments

Plaintiff argues that the ALJ also overlooked her cervical and thoracic spine impairments. Defendant responds that the record contained no objective medical evidence from an acceptable medical source establishing that Plaintiff had a medically determinable impairment of her cervical or thoracic spine, and therefore, the ALJ could not evaluate whether such conditions resulted in any limitations.

Again, the ALJ does not mention the alleged limitation.  While he may have considered the evidence and concluded Plaintiff did not meet her burden of proving she had a medically determinable impairment of her cervical or thoracic spine, there is no indication of such consideration in his decision.  Upon remand, the Commissioner should determine whether Plaintiff had medically determinable impairments of her cervical and thoracic spine.

### C.     Obesity

The ALJ found Plaintiff's obesity to constitute a severe impairment.  Plaintiff asserts that the ALJ did not provide adequate analysis as to the effects of Plaintiff's obesity on her RFC.

In discussing whether Plaintiff's obesity meets or equals the criteria of a listing at step three of the sequential evaluation process, the ALJ stated that he considered Social Security Ruling 19-2p, and "[t]he effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant."  However, at step four, the ALJ provided no further description of his consideration or conclusions regarding Plaintiff's severe impairment of obesity.

---

[17] *See Elliott*, 507 F. Supp. 2d at 1195.

In *Johnson v. Commissioner*, 764 F. App'x 754 (10th Cir. 2019), a case cited by Defendant, the plaintiff made a similar argument about obesity.[18] The Tenth Circuit stated that "in assessing RFC, an ALJ should consider 'any functional limitations resulting from the [claimant's] obesity,' in addition to any limitations resulting from any other impairments."[19] The court then found that the ALJ had done that based on the following language in the ALJ's decision:

> In the present case, [Johnson's] obesity is not such as to prevent ambulation, reaching, or postural maneuvers. It does, though, in combination with [his] other impairments, somewhat reduce [his] ability to stand, walk, lift and carry. A reduction in capacity to work at the medium exertional range with some further appropriate work restrictions is therefore warranted. These limitations are accounted for in the residual functional capacity as determined herein.[20]

Here, the ALJ made no such statement. Other than listing her height and weight and determining her BMI, the ALJ did not provide any explanation for how he reached his apparent conclusion that Plaintiff's obesity did not cause any limitation. Upon remand, the ALJ should "explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations."[21]

### D.     Mental Impairments

The ALJ found that Plaintiff's depression, bipolar disorder, anxiety, and ADHD were medically determinable impairments but concluded they were not severe. At step three of the sequential evaluation process, the ALJ considered each of the four broad functional areas of mental

---

[18] *Johnson*, 764 F. App'x at 758-59.

[19] *Id.*

[20] *Id.*

[21] *R.T. v. Berryhill*, 2019 WL 632732, at *5 (D. Kan. 2019) (quoting *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003)); *see also DeWitt v. Astrue*, 381 F. App'x 782, 786 (10th Cir. 2010) ("Because the ALJ's decision fails to indicate adequate consideration of [the plaintiff's] obesity in relation to her other impairments and her RFC, we cannot affirm the denial of benefits.").

functioning found in the regulations for evaluating mental disorders and in the listing of impairments (the "paragraph B" criteria).[22] The ALJ concluded that Plaintiff had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing herself. The ALJ stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.
>
> In reaching the conclusion that these impairments do not significantly limit the claimant's ability to perform basic work activities, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929, and SSR 16-3. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927.

The ALJ then formulated an RFC that did not include any functional limitation reflective of or related to Plaintiff's mental impairments. The accompanying narrative does not contain any additional "more detailed assessment" of Plaintiff's mental residual functional capacity. The ALJ's only reference to Plaintiff's mental impairments in step four is a statement that APRN Jones, the consultative medical examiner, "opined that Plaintiff [would] have difficulty in a work environment interacting with coworkers and supervisors." However, the ALJ found that opinion was not supported "because the record fails to support any mental or social limitations, nor is Ms. Jones a specialist in mental health."

---

[22] 20 C.F.R., Part 404, Subpart P, Appendix 1.

Plaintiff asserts that the ALJ erred by failing to include in the RFC any limitation related to her mental impairments. She argues that even though the ALJ determined that her mental impairments did not limit her ability to carry out *basic* work activities and were therefore deemed non-severe, he should have taken the additional step of considering whether her ability to perform any *non-basic* work activities was compromised as a consequence of her mental limitations. Plaintiff cites authority from the Western District of Missouri in support of her argument,[23] as well as SSR 96-8p, which states, "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim."[24]

Defendant responds that "the record is devoid of a single abnormal mental status examination finding" and that the ALJ's conclusion that Plaintiff had mild limitations in paragraph B criteria does not mandate any finding of functional limitation in the RFC assessment under Tenth Circuit precedent.

Defendant is correct that the inclusion of some functional limitation in the RFC on the basis of a finding of mild paragraph B limitations is not mandated.[25] However, "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps

---

[23] *See Berutti v. Saul*, 2021 WL 1499313, at *2 (W.D. Mo. 2021) ("[T]he Court cannot discern why the ALJ chose not to include any mental limitations in the RFC after finding Berutti to have mild mental limitations."); *Neeley v. Berryhill*, 2017 WL 4074614, at *3 (W.D. Mo. 2017); *Clevenger v. Colvin*, 2016 WL 3911982, at *2 (W.D. Mo. 2016); *Martinette v. Comm'r, SSA,* 2019 WL 2914098, at *2 (W.D. Mo. 2019); *Ollila v. Colvin*, 2014 WL 7238128, at *3 (W.D. Mo. 2014).

[24] SSR 96-8p, 1996 WL 374184, at *5.

[25] *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013).

four and five."[26]  In *Wells v. Colvin*, the ALJ found that the claimant had the medically determinable mental impairments of anxiety disorder and an affective disorder.[27]  At step two, the ALJ determined that these impairments were non-severe because the claimant had only mild restriction of activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation.[28]  The ALJ then "stated that [the] findings [of mild limitations] do not result in further limitations in work-related functions in the RFC assessment below."[29]  The Tenth Circuit expressed concern that this language implied that the ALJ "may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments" and held that such reliance would be "inadequate under the regulations and the Commissioner's procedures," explaining that step four requires a more detailed analysis.[30]

In this case, the ALJ made a step-two statement that is very similar to the one that *Wells* implied would be inadequate: "The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."  Then, at step four the ALJ did not engage in any further analysis of Plaintiff's mental functions and how they

---

[26] *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013); *Hunter v. Astrue*, 2011 WL 752115, at *4 (D. Kan. 2011) ("Although the ALJ found at step two that Dr. Moeller's limitation did not produce a 'severe' mental impairment, the regulations require that even where an impairment is not 'severe,' it must be considered along with all other impairments in assessing RFC.").

[27] *Wells*, 727 F.3d at 1068.

[28] *Id.*

[29] *Id.* (brackets and internal quotation marks omitted).

[30] *Id.*; SSR 96–8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].")

may or may not be impacted by her medically determinable mental impairments. It therefore appears that the ALJ did not complete the procedure prescribed by the regulations for step four.[31]

Remand is required on this issue.[32] The Court finds support for this conclusion by the fact that the paragraph B criteria allow for a finding of "none" in rating the degree of functional limitations, yet the ALJ found that Plaintiff had "mild limitations" in all four functional limitation categories.[33] As the Tenth Circuit noted in *Wells*, the ALJ

> could, of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4) (permitting ALJ to find that degree of limitation in each of the four relevant functional areas is "none"). Such a finding would obviate the need for further analysis at step four. That is not the case here, however; the ALJ did find "mild" restrictions in three of the relevant functional areas, requiring further analysis.[34]

On remand, the ALJ should consider Plaintiff's mental impairments, regardless of their severity, and make an RFC assessment that includes a narrative discussion regarding whether Plaintiff's mental impairments, combined with her physical impairments, warrant any limitations in the RFC for Plaintiff.[35]

---

[31] *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (applying *Wells* in considering similar step-two statement with corresponding lack of apparent analysis at step four and finding ALJ failed to use the prescribed step-four procedure).

[32] *See Bond v. Astrue*, 2011 WL 2532967, at *6 (W.D. Okla. 2011), *report and recommendation adopted*, 2011 WL 2518860 (W.D. Okla. 2011) (remanding where ALJ found mild mental limitations at step 2 but ambiguous language similar to that used here made it unclear whether ALJ intended to include mental limitations in RFC).

[33] *Id.*

[34] *Wells,* 727 F.3d at 1065, n.3.

[35] *Golden-Schubert v. Comm'r, SSA*, 773 F. App'x 1042, 1051 (10th Cir. 2019) *(*quoting *Wells*, 727 F.3d at 1065) (emphasis omitted) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' ... when we assess your residual functional capacity."); 20 C.F.R. § 416.945(a)(2) (same)).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED**, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 28th day of January, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE